UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY M. LEE,                    )
                                    )
        Plaintiff,                  )
                                    )
    vs.                             )        Case No. 4:11CV673MLM
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the applications of Kimberly M. Lee ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§

405(g) et seq.  Plaintiff filed a Brief in Support of the Complaint. Doc. 19.  Defendant filed a Brief

in Support of the Answer. Doc. 20.  The parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 9.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for benefits on February 15, 2008, alleging a disability onset date

of February 1, 2007. Tr. 118, 122.  Following an unfavorable determination, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"). Tr. 73-78.  On July 30, 2009, a hearing was

held before an ALJ, at which Plaintiff amended her onset date to December 31, 2007. Tr. 16-62.  By

decision dated May 28, 2009, the ALJ found that Plaintiff was not disabled through the date of the

decision. Tr. 9-15.  On May11, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-5.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.

2

Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence.  Clark v. Heckler, 733 F.2d

3

65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).   In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or  deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

4

to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12

5

months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

6

The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id.   Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert ("VE") may be used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.

Use of the Medical-Vocational Guidelines ("Guidelines") is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing that she was five feet five inches tall and that she had gained about sixty-five pounds since she started taking Prednisone; that she has lupus; that her onset of lupus was in April 2007; that she had not worked since July 1, 2007; that she last worked as a parent facilitator for the St. Louis Board of Education; that she was a high school graduate; that she studied computer science in college and did not receive a degree; that she has depression with anxiety attacks, daily crying spells, and diminished memory and concentration; and that she could not stand for more than ten minutes, walk more than a block at a time, bend, stoop, or lift more than a gallon of milk.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2007; that she had systemic lupus crythematosus controlled by medication; that she had no impairment or combination of impairments that met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4; that Plaintiff's allegations regarding the severity of her impairments were not credible; that Plaintiff had the RFC to lift or carry ten pounds frequently and twenty pounds

8

occasionally, with no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; that Plaintiff had no credible non-exertional limitations; that Plaintiff's RFC did not preclude her from performing her past relevant work as a public school system parent facilitator; and that, therefore, Plaintiff was not disabled as defined in the Act.  Alternatively, the ALJ found that if Plaintiff were to be exertionally limited to sedentary work so that she could not perform her past relevant work, she would still not be disabled.[1]  Tr. 14.  In regard to Plaintiff's lupus, the ALJ noted that Plaintiff's lupus is a serious disease but that, during the relevant period, the record reflected that Plaintiff did not have the "persistently intense signs outlined" in the relevant listing. Tr. 13.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of her treating doctor, Richard D. Brasington, Jr., M.D.

### A.    Plaintiff's Credibility:

---

[1]    20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which  involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  Indeed,  SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)).  Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the weight given to the opinion of Dr. Brasington. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams , 393 F.3d at  801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives

10

good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities, including that she testified that she had one to two "good days" a week and that on other days she stayed in bed all day, occasionally reading, watching television, or operating a home computer; that she drove less than five miles a week; that when she goes to the grocery store she used a motorized cart and carried nothing heavier than a lightweight bag of groceries; that she made beds and changed sheets, with help, for about thirty minutes at a time; that her children did most of the cooking and strenuous chores, such as vacuuming and sweeping; that she tried to attend church about twice a month; and that she no longer attended her children's school activities. Tr. 10. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis, 239 F.3d at 967 (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a

claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)).  See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-41 (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).  The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his complaints of debilitating pain.  The court further finds that substantial evidence supports the ALJ's decision in this regard.

Second, the ALJ considered that Plaintiff had a good to excellent work record during the years she worked at the school board, with much lesser earning in previous years. Tr. 10. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980).  For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993).  See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993).  The court finds that the ALJ's consideration of Plaintiff's earning record is supported by substantial evidence.

Third, the ALJ considered Plaintiff's symptoms prior to her alleged onset date, including that she reported pain and swelling as early as October 4, 2006; that she alleged joint pain as of November 29, 2006; that she had emergency room attention in April 2007; that she was hospitalized for five days, commencing April 11, 2007, for vasculitis, mainly affecting her left lower extremity;  that she was started on Prednisone and other medications for lupus; that she started seeing Dr. Brasington in May 2007; and that, as of August 22, 2007, Plaintiff had gained thirteen pounds since taking

12

Prednisone and she reported some fatigue.  The court finds that the ALJ's consideration of Plaintiff's symptoms prior to her alleged onset date is supported by substantial evidence.

Fourth, the ALJ considered that in April 2007 Plaintiff was started on medication for lupus and that as of August 22, 2007, Plaintiff had gained weight, as described above, and reported that she had some fatigue "but her other problems and symptoms had improved." Tr. 11. The ALJ also considered that Dr. Brasington adjusted Plaintiff's medications on August 22, 2007.  The ALJ further considered that the record did not reflect that Plaintiff had an significant, uncontrollable adverse side effects from medications and that, whatever side effects she had, were "presumably in all instances eliminated or at least greatly diminished by simple changes in either the types of medication or the size and/or frequencies of the dosages." Tr. 13.  The court notes that when Plaintiff was hospitalized for vasculitis for five days commencing April 11, 2007, it was reported that she was given Prednisone and that the swelling in legs decreased; that her rash improved slightly; and that her pain had "improved significantly." Tr. 245.  Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).  Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical

records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).  The court finds that the ALJ's decision, in this regard, is based on substantial evidence.

Fifth, the ALJ considered results of diagnostic testing including that May 10, 2007 pulmonary function tests were normal as were bone density tests; that Plaintiff had signs of elevated DNA binding; that an April 29, 2008 x-ray of the right foot was negative; that a June 24, 2008 x-ray of Plaintiff's right knee was negative, after Plaintiff alleged right knee pain; that on July 10, 2008, a "trace of right knee effusion" was seen; and that thyroid tests of February 2009 did not result in a diagnosis of a long-term thyroid disorder. Tr. 11.  The court finds that the ALJ's decision in regard to diagnostic test results is based on substantial evidence.

Sixth, the ALJ considered that Plaintiff admitted that she had no treatment for depression, anxiety attacks, crying spells or other signs of severe mental or mood disorder and that "none were really mentioned by Dr. Brasington or others." Tr. 13.  The ALJ also considered that Plaintiff required no psychiatric hospitalization or similar drastic intervention and that she had no long-term or sustained course of mental health treatment from a psychiatrist, psychologist, or other mental health professional. Tr. 14.  A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322.  The court finds that the ALJ's consideration of the lack of treatment which Plaintiff received is based on substantial evidence and is consistent with the Regulations and case law.

Seventh, the ALJ considered that, at the hearing, Plaintiff exhibited no obvious signs of depression, anxiety, memory loss, or other mental disturbance. Tr. 14.  While an ALJ cannot accept

or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed, 524 F.3d at 876 (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.  As such, the court finds that the ALJ's decision in this regard is based on substantial evidence and is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's credibility findings are based on substantial evidence and that they are consistent with the Regulations and case law.

**B.      The Opinion of Dr. Brasington:**

As considered by the ALJ, Dr. Brasington, a rheumatologist, was Plaintiff's treating physician from March 7, 2008, to July 24, 2009, and he  completed a form indicating that Plaintiff could not even perform sedentary work. Tr. 11.  As the ALJ found that Plaintiff could perform light work as required by her past relevant employment, and alternatively, sedentary work, ALJ did not find that Dr. Brasington's opinion was controlling.  Plaintiff contends that it was error for the ALJ to do so.

Dr. Brasington opined on a Physician's Assessment for Social Security Disability Claim, completed on July 9, 2009, that, in an eight-hour workday, Plaintiff needed to rest two hours; that

15

Plaintiff could lift/carry ten pounds; that she could frequently carry a maximum of three pounds; that she could stand/walk one hour and she could do so for only a half hour without interruption; that she could sit a total of four hours and could do so only for one hour without interruption; that she needed to rest a total of four hours and must do so for periods of thirty minutes. Dr. Brasington further opined that Plaintiff would never be able to climb, balance, stoop, crouch, kneel, or crawl; that she had limitations in reaching, handling, pushing, and pulling; that she had no limitations in regard to feeling, seeing, hearing, speaking, and noise; that she had environmental restrictions in regard to exposure to heights, moving/vibration, machinery, temperature/humidity, chemicals/fumes, dust; and that she could not sustain full time employment at the sedentary level at the present time due to fatigue. Tr. 418-19.

As considered by the ALJ, "[a] treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). As further considered by the ALJ, the opinion of a treating doctor is not controlling if it is "inconsistent with the preponderance of other evidence in the record, medical and otherwise." Tr. 12-13. See Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole.").

First, the ALJ considered that Dr. Brasington's July 9, 2009 Assessment was "litigation based" and that it was given to Dr. Brasington by Plaintiff's attorney. Tr. 13. While the fact that Dr. Brasington's Assessment was litigation based is not sufficient reason to discount Dr. Brasington's Assessment, this was merely one factor considered by the ALJ in determining that this Assessment should not be given controlling weight.

Second, the ALJ considered that Dr. Brasington's treatment notes were inconsistent with his July 2009 Assessment. Tr. 13. Where a treating physician's notes are inconsistent with his RFC assessment, controlling weight is not given to the RFC assessment. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); Chamberlain v. Shalala, 47 F.3d 1389, 1494 (8th Cir. 1995); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). When Plaintiff first presented to Dr. Brasington, on May 29, 2007, Dr. Brasington reported that she was a "generally well-appearing woman in no acute distress"; that her vital signs were unremarkable except that she was "slightly tachycardiac"; that she had numerous lesions; that her pupils were equal, round, and reactive to light; that she had no ocular inflammation or dryness; that her lungs were clear; that her heart had no murmurs, rubs, or gallops; that she had no edema in her extremities; that her musculoskeletal examination was unremarkable; that he was prescribing medication for her lupus; and that she was to return in about a month. Tr. 394-95. When Plaintiff returned on June 27, 2007, Dr. Brasington reported that Plaintiff's lungs were clear; that her heart had no murmurs, rubs or gallops; that he thought she could "get by without the azathioprine"; that Plaintiff was to "remain off" this medication; that she was to "drop" her dosage of prednisone; and that she was to return in two months. Tr. 393. On June 24, 2008, Dr. Brasington reported that Plaintiff presented with right knee pain of several days; that physical examination showed no effusion of the right knee, a "little bit of tenderness beneath the patellar tendon, and a little

17

fluid in that area"; that a radiograph of the knee was normal; and that Plaintiff's knee pain "should resolve with conservative care and [was] not evidence of active lupus."   The court finds, therefore, that the ALJ 's consideration of Dr. Brasington's office notes is based on substantial evidence and that his decision, in this regard, is consistent with the Regulations and case law.

Third, the ALJ considered that Dr. Brasington's Assessment "reads like a recitation of [Plaintiff's] most recent version of her subjective complaints and of her alleged functional limitations." Tr. 13. The court has found above, that the ALJ's credibility determination is based on substantial evidence.   An ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).   As such, the court finds that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

Fourth, the ALJ considered that Dr. Brasington's Assessment was inconsistent with the record as a whole.   In particular, the ALJ considered that Plaintiff's medical records reflect that she reported pain and swelling in some joints as far back as October 4, 2006; that she still alleged joint pain in November 2006; that on April 8, 2007, she presented in the emergency room; that she was hospitalized for five days commencing April 11, 2007, for vasculitis, affecting mainly the left lower extremity; that she was started on Prednisone and other medications for lupus; that, in May 2007, the lesions on her legs were much less pronounced; that pulmonary function tests and bone density studies of May 10, 2007, were normal; and that an eye examination of May 21, 2007, was negative. Tr. 11, 244-46, 289-98.   Additionally, Richard E. Ostlund, M.D., of the Washington University School of Medicine, reported, on February 5, 2009, that Plaintiff was seen in consultation for

18

abnormal thyroid function tests; that Plaintiff did "not complain of any symptoms except for fatigue that she attribute[d] to lupus"; that, on questioning, she did not "report heat intolerance and sweating"; that she had no palpitations, tremors, or diarrhea; that she did not have dry skin, dry hair, constipation, or cold intolerance; that she had no eye symptoms; that her lupus had "not been well controlled and she [found] it hard to taper her prednisone below 20mg."; that Plaintiff's lab tests "suggest[ed] mild subclinical hyperthyroidism"; that "this might resolve over time"; that he would not treat Plaintiff for this condition at that time; that her thyroid was normal size without nodules or neck adenopathy; that her lungs were clear; that she had 5/5 strength in the upper and lower extremities; and that her cranial nerves were intact. Tr. 421-22. A treating physician's opinion is given controlling weight "if it ... is not inconsistent with other substantial evidence." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). On the other hand, "[i]f the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007). As such, the court finds that the ALJ's consideration of medical records other than Dr. Brasington's upon failing to give Dr. Brasington's opinion controlling weight is based on substantial evidence and that it is consistent with the Regulations and case law.

Fifth, Dr. Brasington's Assessment included checkmarks on a form. A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo, 377 F.3d at 805-06; Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

Sixth, to the extent Dr. Brasington opined that Plaintiff is not able to work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives

19

controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Seventh, the ALJ gave good reasons for not giving Dr. Brasington's opinion controlling weight. SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5. See also Martise v. Astrue, 641 F.3d 909 (8th Cir. 2010) (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)).

Eighth, the ALJ considered that Plaintiff did not have the persistently intense signs of lupus consistent with the Listing 14.02, the listing for lupus. See 20 C.F.R. Ch. 111, pt.404, subpt. P, app.1. In this regard, the court notes that Listing 14.02 requires that the ALJ consider a claimant's ability to function on a sustained basis, the claimant's symptoms, the frequency and duration of the manifestations of the claimant's immune system disorder, periods of exacerbation and remission, and the functional impact of the claimant's treatment. See Listing 14.02(I)(2). To the extent the ALJ did not specifically address each of these areas, it does not mean that the ALJ did not consider them. See Karlix, 457 F.3d at 746 ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)). In regard to the requirement that an ALJ consider the severity of a claimant's lupus symptoms, the ALJ in the matter under consideration concluded that Plaintiff's limitations were mild. Tr. 13. See Listing 14.02(I)(3)-(5). The court finds that the ALJ's decision, in regard to Listing 14.02, is supported by substantial evidence and that it is consistent with the Regulations.

Ninth, the ALJ did take into consideration some limitations suggested by Dr. Brasington. Indeed, some of the limitations found by Dr. Brasington are incorporated in the ALJ's determination

that Plaintiff can perform her past relevant work as well as his determination that, alternatively, she can preform sedentary work.  In this regard, the ALJ found that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl.  Moreover, Dr. Brasington did opine that Plaintiff could lift ten pounds. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").  See also Martise, 641 F3d at 926 (quoting Ellis, 392 F.3d at 994).

Tenth, to the extent Plaintiff alleges that the record is incomplete because she was part of a clinical study and those records cannot be produced, it is Plaintiff's burden to establish her disability. See Stormo, 377 F.3d at 806.  In any case, the record reflects that the ALJ reviewed all of Plaintiff's records which were part of the record and resolved conflicts among the various physicians who treated and/or examined Plaintiff. Estes, 275 F.3d at 725.

In conclusion, the court finds that the ALJ gave proper weight to Dr. Brasington's opinion and that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.  Additionally, the court finds that the ALJ's RFC determination is based on substantial evidence as is his ultimate findings that there is work which Plaintiff can perform and that she is not disabled.  To the extent the ALJ may have erred in finding that Plaintiff could perform her past relevant work as a public school system facilitator, the court finds that this would not require the court to set aside the ALJ's decision as the ALJ's alternative finding that she can perform

sedentary work is based on substantial evidence. See Karlix, 457 F.3d at 746 ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)). Moreover, a VE testified that there was work in the national economy which a person of Plaintiff's age, thirty-three at the time of the hearing, and with her education, who could perform sedentary work, could perform. Tr. 59-60. See Martise, 641 F.3d at 927 (holding that where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision).  As such, the court finds that the ALJ's decision that Plaintiff was not disabled through the date of his decision is based on substantial evidence and consistent with the Regulations and case law.[2]

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.


Accordingly,


**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 19,

---

[2]      As noted by the ALJ, the court likewise acknowledges that lupus is a serious disease.  In that respect, Plaintiff has the opportunity to file a new application for benefits if her condition worsens.

22

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>18th</u> day of June, 2012.